## UNITED STATES v. MOODY et al.
### No. 18117.

United States District Court,
W. D. Missouri, W. D.
Jan. 24, 1952.

Sam M. Wear, U. S. Atty., and Harry F. Murphy, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Herbert K. Hyde and Lee Williams of Oklahoma City, Okl., for defendant Moody.

Malcolm E. Lafargue, Shreveport, La., and George V. Aylward, Jr., Kansas City, Mo., for defendant Castleman.

DUNCAN, District Judge.

Defendants are officers of the Sun Export Company, a corporation, engaged in the business of a wholesale liquor dealer at Lake Village, Arkansas. Moody is the secretary-treasurer, and Castleman is the manager of the corporation. The indictment charges:

"That during all times herein mentioned said corporation was required by regulations made in pursuance to the Revenue Laws to make and keep a record entitled 'Wholesale Liquor Dealers' Monthly Report', Form No. 338, consisting of a summary of Forms 52(a) and 52(b) and file the same with Supervisory District No. 11, at Kansas City, Missouri, which said District office is within the jurisdiction of this court and that the said State of Arkansas is located in and is a part of said District No. 11."

"That the said Taft Moody and Steve Castleman, on the 10th day of November, 1949 did wilfully aid and assist in and procure, counsel and advise, in the preparation of a 'Wholesale Liquor Dealers' Monthly Report' on Form 338 consisting of a summary of Forms 52(a) and 52(b), for the month of October, 1949, *to be filed* in said District No. 11 at Kansas City, Missouri, showing distilled spirits received and disposed of during said month of October, 1949, and defendant Taft Moody signed said report for and on behalf of said corporation and swore under oath that said report contained the full and complete report of all bottled spirits received and disposed of during the month of October, 1949, and on hand at beginning and end of said month. Which said report was filed with the Supervisory District No. 11 at Kansas City, Missouri, in the Western District of Missouri, on the 14th day of November, 1949, and that the part of said report consisting of Form 52(b) contained false and fraudulent statements and representations which the defendant Taft Moody and Steve Castleman well ·knew were false and fraudulent at the time they aided and assisted in the making of said report and at the time defendant Taft Moody signed and swore to said report; that the part of said report Form 52(b) was false and fraudulent in that it showed and reported sales to certain persons when in truth and in fact the names of said persons were wholly fictitious and in truth and in fact no such sales were made to the named persons as no such persons existed." (Emphasis supplied.)

The indictment consists of four identical counts, except as to the months for which the alleged false report was made. The various counts refer to the months of October, November, December, 1949, and January and February, 1950. The defendants have filed Motion to Dismiss on the ground that the District Court for the Western District of Missouri has no jurisdiction or venue of the crime alleged, and that two separate and distinct offenses are charged in each of the several counts of the indictment. The Government bases the indictment upon § 3793, Title 26 U.S.C. A. which provides among other things: "Any person who willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a false or fraudulent return, affidavit, claim, or docucent, shall (whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document) be guilty of a felony, and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

Section 2857 of the same title provides that:

"Every rectifier and every wholesale liquor dealer who sells, or offers for sale, distilled spirits in quantities of five wine-gallons or more to the same person at the same time shall keep daily, at his place of business covered by his special tax stamp, a record of distilled spirits received and disposed of by him, and shall render under oath correct transcripts and summaries of such records: *Provided,* That the Commissioner may in his discretion require such record to be kept at the place where the spirits are actually received and sent out. The records shall be kept and the transcripts shall be rendered in such form, and under such rules and regulations as the Commissioner, with the approval of the Secretary, may prescribe.

"The records required to be kept under the provisions of this section and regulations issued pursuant thereto, shall be preserved for a period of four years, and during such period shall be available during business hours for inspection and the taking of abstracts therefrom by the Commissioner or any internal revenue officer.

"Every rectifier and wholesale liquor dealer who refuses or neglects to keep such records in the form prescribed by the Commissioner, with the approval of the Secretary, or to make entries therein, or cancels, alters, or obliterates any entry therein (except for the purpose of correcting errors) or destroys any part of such records, or any entry therein, or makes any false entry therein, or hinders or obstructs any internal revenue officer from inspecting such records or taking any abstracts therefrom, or neglects or refuses to preserve or produce such records as required by this chapter or by regulations issued pursuant thereto, shall pay a penalty of $100 and, on conviction, shall be fined not less than $100 nor more than $5,000, and be imprisoned not less than three months nor more than three years.

"Every rectifier and wholesale liquor dealer who refuses or neglects to render transcripts or summaries in the form required by the Commissioner, with the approval of the Secretary, shall, upon conviction, be fined not more than $100 for each such neglect or refusal."

By regulation, the Commissioner requires the persons covered by the aforesaid statute to make a monthly report on Form 338 which contains information with respect to the amount of wine-gallons of whiskey, gin and brandy on hand the first of each month, the amount received on the premises, the gains and the totals. Also the amount sent out from the premises, losses, and the amount on hand at the end of the month. It is also a requirement by regulation, that Form 338 shall contain a summary of the information that must be kept under the provisions of the statute, and this summary is made from Forms 52(a) and 52(b).

Form 52(a) requests information with respect to all distilled spirits, the dates when they were received, the persons from whom received, their address, and who

received said spirits. On Form 52(b) the date, the name and the address of all persons to whom any distilled spirits are disposed of, and by whom such distilled spirits were rectified and bottled, is required. It is this information as contained in Forms 52(a) and 52(b) that is to be returned with Form 338. Form 338 is simply a summary of the information contained in Forms 52(a) and 52(b).

The indictment charges that the names of the persons shown in such report as purchasers of said distilled spirits were wholly fictitious, that no such sales were made to the named persons and that no such persons existed.

Defendants contend that if there was a violation of the statute, the jurisdiction is in the State of Arkansas, and not in the Western District of Missouri. The regulation provides that such report shall be filed in Kansas City, Missouri, and it is the contention of the Government that the place where the report is to be filed is the place where the violation occurred, and the jurisdiction in which the prosecution should be lodged.

Section 2857, 26 U.S.C.A. § 2857, provides a penalty for a violation of its provisions with respect to the making and keeping of such records, and for a refusal or neglect to render transcripts or summaries in the form required by the Commissioner. Separate penalties are provided for violations in the manner of keeping the records and for failure to render transcripts as required by the law. Certainly any violation under that section would be in the jurisdiction where the records are required to be kept, and where the alleged unlawful acts occurred, but the Government insists that it is not prosecuting under this section of the statute, but under § 3793, 26 U.S.C.A. § 3793, which applies to the *filing* of reports. A reading of the indictment clearly reveals that the defendants are not charged with failing to render a report or failing to file a report. It is alleged that the defendants " * * * did wilfully aid and assist in and procure, counsel and advise in the preparation of a 'Wholesale Liquor Dealers' Monthly

Report' on Form 338 consisting of a summary of Forms 52(a) and 52(b), for the month of October, 1949, *to be filed* in said District No. 11 at Kansas City, Missouri, * * *." (Emphasis supplied.)

It would therefore seem that all of the alleged violations occurred in the State of Arkansas, where the records were kept, where the report was prepared, and where the oath was administered. There is no allegation that either of the defendants filed the report. It was made "to be filed" in District No. 11 and was filed with the supervisor of District No. 11 at Kansas City, Missouri.

Article 3, Section 2, Clause 3 of the Constitution provides that: " * * * The Trial of all Crimes * * * shall be held in the State where the said Crimes shall have been *committed* * * *." (Emphasis supplied.) And the Sixth Amendment to the Constitution provides that trials shall be, " * * * by an impartial jury of the State and district wherein the crime shall have been *committed*". (Emphasis supplied.)

Rule 18 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides that: "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed, * * *."

We are concerned here solely with the question of where the offense was committed. The statute is silent as to where the indictment for its violation shall be returned. In the case of U. S. v. Johnson, 323 U.S. 273, 275, 65 S.Ct. 249, 250, 89 L.Ed. 236, the Court said:

"Aware of the unfairness and hardship to which trial in an environment alien to the accused exposes him, the Framers wrote into the Constitution that 'The Trial of all Crimes * * * shall be held in the State where the said Crimes shall have been committed * * *.' Article III, § 2, cl. 3. As though to underscore the importance of this safeguard, it was reinforced by the provision of the Bill of Rights requiring trial 'by an impartial jury of the State and district wherein the crime shall have been committed.' Sixth

Amendment. By utilizing the doctrine of a continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates. Thus, an illegal use of the mails or of other instruments of commerce may subject the user to prosecution in the district where he sent the goods, or in the district of their arrival, or in any intervening district. * * *

"These are matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law. They have been adverted to, from time to time, by eminent judges; and Congress has not been unmindful of them. Questions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed. If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it."

It cannot be denied that the courts have held that where income tax returns are required to be filed in certain places, fraud with respect to them may be prosecuted in the place where the filing is required, but it seems to me those decisions should not apply in a case where the charge is so specific as it is here—that the making of the false return was aided, assisted in, procured and counseled in the place where the business of the defendants is located.

Of, course, it is not disputed that where the statute makes it unlawful to use the mails, under certain circumstances, the offense may be charged wherever the mails have been used. That was true in the Dentures Act, 18 U.S.C.A. § 1821, as discussed in the case above quoted.

In the case of U. S. v. Newton, 4 Cir., 162 F.2d 795, almost the exact language was used in the indictment, wherein it was alleged that the defendant did "aid and assist in, and procure, counsel and advise the preparation * * * of a certain false claim, in the Western District of Virginia, which claim was filed with the Collector of Internal Revenue for the District of Virginia, which was in the Eastern District." On the question of venue, the court said [68 F.Supp. 954]: "It is to be noted that, while the statute makes it a crime to aid or assist in 'the preparation or presentation' of a false claim, the indictment charges only 'the preparation' of false claims. * * *"

That is the charge in the case before us here, that is, that they "did wilfully aid and assist in and procure, counsel and advise in the preparation of a 'Wholesale Liquor Dealers' Monthly Report' * * *."

The Court went on to say: "* * * It seems to me that the actual filing or presentation of the false claim is not an essential element of the crime here charged, in the sense * * * that the defendant filed or presented the false claim. However, in my opinion, the fact of the filing or presentation of the false claim with the Collector, is an essential element of the crime in the sense that the filing or presentation by somebody is a necessary element of proof, because the document does not become a claim or return until so filed. * * * Therefore, it would seem to follow that although proof of the filing or presentation by some one is necessary in order to show that the document became an actual claim or return, it is not here charged that the defendant aided in the filing or presentation of the claims, and it would seem that the entire offense which he is charged with committing took place in the Western District of Virginia."

■ It is alleged that the information contained in Forms 52(a) and 52(b) summarized in Form 338 was false. As heretofore stated, it is clearly a violation of the statute to make such false records. The records are required to be kept daily and retained in the office of the wholesale liquor dealer. A failure to do so clearly renders such wholesale liquor dealer subject to criminal prosecution. The juris-

diction and venue of such offense would be in the place where the violation occurred—the State of Arkansas.

The ever-increasing complicated economic problems of our time have caused Congress to extend administrative controls far beyond the vision of those of an earlier age. Such controls necessarily confer upon the administrative agencies the power to make rules and regulations for the administration of the authority conferred upon them.

■ These regulations, when within the scope of the agency's authority, have the force and effect of law, even to the extent of imposing criminal liability for their violation. Such regulations may, and often do, as in this instance, provide for the zoning of certain sections of the country for administrative purposes. Reports may be required to be filed at a designated place within such zone. Such zones may comprise several states or overlap the jurisdiction of numerous district courts. We must know judicially that numerous reports are required of those engaged in business to be made, in many instances, to several administrative agencies.

■ It seems to me that in applying the law to such administrative regulations, the court should not by judicial interpretation or construction, attempt to extend their geographical jurisdiction or venue in the absence of a clear statutory direction or intent. Otherwise, criminal charges may be brought against citizens far distant from their places of residence or business, or the place where the offense was actually committed, and require such persons to defend themselves at great expense in the transportation of records, witnesses, etc. I cannot conceive of that being the law.

■ It is my conclusion that the offenses charged against the defendants in the indictment were committed in the State of Arkansas, and that the Western District of Missouri is without jurisdiction.

For that reason the Motion to Dismiss as to each defendant is sustained.

In view of the above ruling, it will not be necessary to discuss the question of duplicity.