UNITED STATES

v.

Edward R. GILKEY.

Crim. No. 73–241.

United States District Court,
E. D. Pennsylvania.

Sept. 5, 1973.

Raymond E. Makowski, Asst. U. S. Atty., Strike Force, Robert E. J. Curran, U. S. Atty., Philadelphia, Pa., for government.

Thomas A. Livingston, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

EDWARD R. BECKER, District Judge.

■■ This case raises the question whether venue for prosecution of a case arising under 26 U.S.C. § 7206(1) lies in the district where the defendant's income tax return was filed, even though the returns were prepared and signed in and mailed from another district.[1] At a nonjury trial the government proved that the defendant intentionally omitted certain income from his 1970 and 1971 federal individual income tax returns, whereupon we found the defendant guilty on two counts of violating that statute. Defendant, asserting that it is uncontroverted that he did not make or subscribe the returns in the Eastern District of Pennsylvania, has moved for a new trial and for arrest of judgment, pressing but one ground in support of his motion:[2] that the government did

---

1. 26 U.S.C. § 7206(1) subjects to criminal penalties "Any person who—(1) . . . Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . . "

2. In his formal motions the defendant also asserted insufficiency of the evidence, but he did not mention that ground in his brief. In any event, the conviction was amply supported by the evidence and the point does not require discussion here.

not prove that the offenses charged were committed in the Eastern District of Pennsylvania.[3] For the reasons that follow, we deny his motion.

The facts elicited at trial which are pertinent to the defendant's motion are uncontested, and are essentially as follows. At the time of the filing of the 1970 return the defendant resided in Washington County, in the Western District of Pennsylvania. The return was prepared and signed in that District and mailed from there to the Internal Revenue Service Center in Philadelphia, in the Eastern District of Pennsylvania, the place designated for filing. At the time of the filing of the 1971 return, the defendant resided in Luzerne County, in the Middle District of Pennsylvania, and the return was prepared and signed in that District and mailed from there to the Internal Revenue Service Center in Philadelphia.[4]

The applicable statutory provisions for venue may be recited briefly. Rule 18 of the Federal Rules of Criminal Procedure provides that "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. . . ." 18 U.S.C. § 3237 contains two subsections, both relevant to this case:

(a) Except as otherwise expressly provided by enactment of Congress, *any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.*

Any offense involving the use of the mails . . . is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such . . . mail matter moves.

(b) *Notwithstanding subsection (a) . . . where an offense involves use of the mails and is an offense described in section . . . 7206(1) of [the Internal Revenue Code of 1954]* (whether or not the offense is also described in another provision of law), and *prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may upon motion filed in the district in which the prosecution is begun, elect to be tried in the district in which he was residing at the time the alleged offense was committed: Provided,* That the motion is filed within twenty days after arraignment of the defendant upon indictment or information.

(emphasis added.) The issue before us, then, is where the defendant committed the offense of making and subscribing the returns.

There is no appellate authority in this circuit on the point at issue. In United States v. Goldberg, 206 F.Supp. 394, 397–398 (E.D.Pa.1962), aff'd, 330 F.2d 30, 43 (3d Cir. 1964), cert. denied, 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964), Judge Kraft wrote in an income tax evasion case that venue is proper both where the return is prepared and where it is filed. But the latter point was dictum since what was at issue was whether venue lay where the returns were prepared, and it was on that point that he was affirmed. There is also surprisingly little law on the general subject of whether venue lies in the district where a tax return is filed. However, cases involving this issue point to the conclusion that the maker of a false return may be prosecuted either in the district where the return is prepared and signed or in the district where it is filed. *Accord,* Kowalsky v. United

---

3. Venue is an element of the offense and must be proved by the government if it is in issue. United States v. Budge, 359 F.2d 732, 734 (7th Cir. 1966).

4. In the place designated on the return for the taxpayer's address, the defendant listed the Washington County address in both 1970 and 1971.

States, 290 F.2d 161, 163 (5th Cir. 1961) (tax evasion case) and cases cited therein; United States v. United States District Court, 209 F.2d 575 (6th Cir. 1954) (over Judge Miller's dissent that venue is proper only where the return is filed); United States v. Hagan, 306 F. Supp. 620 (D.Md.1969). There have also been cases where defendants argued that venue was proper only where the return was filed; in rejecting that argument (and upholding prosecution where the return was prepared) the courts have agreed that prosecutions could be brought where returns were prepared but need not be brought there. *See* United States v. Newton, 162 F.2d 795 (4th Cir. 1947), cert. denied, 333 U. S. 848, 68 S.Ct. 650, 92 L.Ed. 1130 (1948); De Rosier v. United States, 218 F.2d 420 (5th Cir. 1955).

The sole exception to the foregoing line of cases is United States v. Wyman, 125 F.Supp. 276 (D.Mo.1954). The *Wyman* opinion, which squarely supports the defendant's position, stated:

> The preparation of a return is a lawful or unlawful act according to the intent and manner of its preparation. The work of preparation is ended before it can be presented.

125 F.Supp. at 280. This holding of *Wyman* was questioned as unprecedented and unexplained in United States v. Horwitz, 247 F.Supp. 412 (N.D.Ill.1965), and we are inclined to agree with *Horwitz* that *Wyman* is not the law. While "make" and "subscribe" are words that connote preparing and signing, we think that a filled-in form 1040 does not become a "return," and a taxpayer does not "make a return," until it is filed with the Internal Revenue Service. To hold otherwise would be not only to defy precedent, but also to offend common sense notions of fairness. For if the offense described in § 7206(1) is completed once the tax form is filled in and signed, then a person can be prosecuted for (1) signing a return he never intends to file, or (2) signing a false return but then changing his mind about breaking the law and sending in a correct return instead, both of which are acts wholly unprejudicial to the functioning of the government. They are totally immaterial in that they have no capacity whatsoever to influence government action. In other words, the taxpayer has the "right of self-correction."[5] This view was aptly expressed in United States v. Bithoney, 472 F.2d 16, 23 (2d Cir.), cert denied, 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397 (1973), quoting from the district court opinion in United States v. Newton, 68 F.Supp. 952, 954 (W.D.Vir.1946).

> If the defendant should assist a taxpayer in the preparation of the most dishonest or fraudulent kind of a return, and then immediately have a change of heart, tear up the document, and throw it in the wastebasket, it is inconceivable to me that he should have committed a crime.

Additional authority for the government's position is found in United States v. Habig, 390 U.S. 222, 88 S.Ct. 926, 19 L.Ed.2d 1055 (1968), where the Supreme Court held that the offenses of tax evasion (26 U.S.C. § 7201) and aiding in the preparation and presentation of a false return (*id.* § 7206(2)) "are committed at the time the return is filed." The issue in that case was on what date the statute of limitations begins to run, and the Court, holding that the date of filing starts the running of the statute, reasoned that Congress could not have "intended the limitations period to begin to run *before appellees committed the acts upon which the*

---

5. *See* United States v. Horwitz, 247 F.Supp. 412, 414 (N.D.Ill.1965):

> We would note in passing that a taxing system based on the citizen's obligation of self-assessment must have, as its logical corollary, the citizen's right of self-correction. It would not seem possible to conclude that obligations under the revenue laws have not been fulfilled until the opportunity for self-correction is lost, nor would it seem that any defect in a return could become material until such time as the return was actually filed.

*crimes were based.*" The implication of this holding is that the crimes defined by the statutes involved in *Habig* were not committed until the returns were filed.

In light of the thrust of the above cases, we conclude that the offense in the instant case was not complete until the return was filed in the Eastern District. The doing of that act in the Eastern District completed in this district the offense begun in the Western District within the meaning of § 3237(a), so venue was properly laid here. This conclusion is consonant with what we perceive to be the Congressional intent and the spirit of the law. Section 3237(b), quoted above, is an indication of Congress's recognition that § 7206(1) prosecutions might, under § 3237(a), be brought in a district where the defendant does not reside, with attendant hardship on the defendant in appearing and bringing in witnesses and possible constitutional ramifications of being tried by a jury not selected from the defendant's district of residence. In that situation, Congress provided the defendant with the choice of having the case transferred to the district where he resided at the time of the offense, as long as he had not since moved into the district where the prosecution was begun.[6] In addition, § 3237(b) applied only to offenses involving use of the mails, and is thus seemingly directed at the type of situation involved here, where a return is mailed from one district to a collection point in another district. This section apparently was a matter of Congress's concern for fairness, since the Internal Revenue Service's centralized collection system often requires the filing of returns at a point some distance from the taxpayer's home.

The untenability of the defendant's position is best demonstrated by an analysis of the government's problem in ever sustaining a § 7206(1) conviction, no matter how strong its case on the falsity of the return, if the defendant's motion were to be granted here. For the government would then be put to discovering and proving where the defendant was sojourning when he prepared the return or when he signed it, a task which will generally be impossible unless the defendant himself reveals that information prior to indictment. We note in this connection that there is no place on the tax return form where the signer is asked to indicate where he prepared or signed it. A prime example of the point at issue is this very case, where the government apparently believed before trial that defendant's 1970 and 1971 returns were prepared and signed at the defendant's home or office in the Western District. His address on the returns for both years was his home in the Western District (See note 4 *supra*.), but in fact he testified at trial that the 1971 return was signed in Luzerne County in the Middle District.

A return may often be prepared or signed in a judicial district other than the one where the defendant resides. The defendant here testified that he prepared his own returns. During April 1971 he could easily have done so while at his parents' home, which he testified was nearby in Ohio. Or in April 1972 he could have prepared his return while on business in New York or New Jersey, both of which are just short distances from Wilkes-Barre where he resided at the time he filed the 1971 return. If a defendant were to testify to such effect at trial, the government ordinarily would be unable to contradict him, and if the defendant's argument in this case is correct, such a defendant would have a potential evasion device. We will not interpret the applicable statutes by resorting to the assumption that Congress

---

6. The text of § 3237(b) is set out on page 1070, *supra*. The pretrial record in this proceeding reflects that the defendant was informed by the court of his right to move for transfer of this case to the Western or Middle Districts, but he declined to do so. The government argued orally that defendant's failure to move for transfer constituted a waiver of the venue point, but we do not have to reach that issue.

intended that the statutes defeat their own enforcement.

In view of the foregoing, we hold that venue was properly laid in this district, and that the government proved its case by showing that the defendant's returns were filed in the Eastern District. Defendant's motions must therefore be denied.