**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                      No. 96-4213

JOHNNY SWANSON, III,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-95-432-A)

Argued: April 11, 1997

Decided: May 5, 1997

Before WILKINSON, Chief Judge, and MICHAEL and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael S. Lieberman, DIMURO, GINSBERG & LIE-
BERMAN, P.C., Alexandria, Virginia, for Appellant. David Glenn
Barger, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON
BRIEF:** Andrew R. Gordon, DIMURO, GINSBERG & LIEBER-
MAN, P.C., Alexandria, Virginia, for Appellant. Helen F. Fahey,
United States Attorney, Scott W. Putney, Special United States Attor-

ney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Johnny Swanson, III, of one count of corruptly endeavoring to obstruct and impede the due administration of internal revenue laws, in violation of 26 U.S.C. § 7212(a) (1994), and four counts of filing false 1988 employment tax returns, in violation of 26 U.S.C. § 7206(1) (1994). The district court ordered the preparation of a presentence report, which indicated that Swanson was responsible for tax losses in excess of $5.4 million and suggested a guideline range of 51 to 63 months. The district court sentenced Swanson to 60 months imprisonment and three years supervised release. Swanson appeals, challenging his convictions and sentences. Finding no reversible error, we affirm.

I.

Swanson's initial and principal challenge is that the applicable statute of limitations barred prosecution of all counts. Swanson presents separate arguments concerning Counts Two through Five and Count One. We address these contentions in order.[1]

_____

[1] The Government argues that Swanson has waived his limitations defenses because he did not attempt to present them to the jury. Swanson did, however, file a pre-trial motion to dismiss based on the statute of limitations and raised the limitations defense again immediately before trial and at the close of the Government's case. Accordingly, we refuse to find Swanson has waived these claims.

2

A.

Counts Two through Five allege that Swanson made, signed, and filed four false Employer's Quarterly Federal Tax Returns in violation of 26 U.S.C. § 7206(1). The parties agree that§ 7206(1) is governed by a six-year statute of limitations. See 26 U.S.C. § 6531.

Swanson claims that the statute of limitations began to run when he prepared and signed the 1988 tax forms -- June 28, 1989. The Government argues that the statute did not begin to run until the forms were filed -- October and November 1990. This is a question of law that we review de novo.

Section 7206 provides:

> Any person who --
>
> (1) Declaration under penalties of perjury
>
> Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . .
>
> . . .
>
> shall be guilty of a felony . . . .

26 U.S.C. § 7206. The statute itself does not require the filing of a return, only willful making and subscribing under the penalty of per-jury. Swanson argues that the statute is therefore violated at the time of signing, and that the statute of limitations begins to run at that time.

Every court to confront the question has held to the contrary. Some have concluded that "[a] violation of 26 U.S.C. § 7206(1) is complete when a taxpayer files a return . . . ." United States v. Marashi, 913 F.2d 724, 736 (9th Cir. 1990); see also United States v. Habig, 390 U.S. 222, 223 (1968) ("The offenses involved in Counts 4 [violation

3

of § 7201] and 6 [violation of § 7206(2)] are committed at the time the return is filed."). Others have reasoned that in order to "make" a return, as required by § 7206(1), the return must be filed. See United States v. Gilkey, 362 F. Supp. 1069, 1071 (E.D. Pa. 1973); United States v. Horwitz, 247 F. Supp. 412, 413-14 (N.D. Ill. 1965); see also United States v. Aramony, 88 F.3d 1369, 1382 (4th Cir. 1996) (listing "ma[king] and subscrib[ing]" as an element of a § 7206(1) offense).

We agree with these courts. Whether filing is viewed as a separate implicit, but necessary, element of a § 7206(1) offense or as incorporated in the statutory "making" requirement, there can be no § 7206(1) offense without filing. "Were it otherwise, the individual making the return could substantially shorten the length of the statutory period by subscribing the return months before it was filed and then retain it so the statute of limitations would be running long before the government had any notice of the offense." Horwitz , 247 F. Supp. at 414-15. Furthermore, if the signing alone were illegal,"a person [could] be prosecuted for (1) signing a return he never intends to file, or (2) signing a false return but then changing his mind about breaking the law and sending in a correct return instead." Gilkey, 362 F. Supp. at 1071.

B.

Swanson's remaining limitations claim involves his conviction under Count One for "corruptly endeavor[ing] to obstruct and impede the due administration of the internal revenue laws" in violation of 26 U.S.C. § 7212(a).

First, Swanson asserts that the length of the statute of limitations governing § 7212(a) is three years while the Government maintains it is six years. The Internal Revenue Code provides a six-year period "for the offense described in section 7212(a) (relating to intimidation of officers and employees of the United States)." 26 U.S.C. § 6531(6) (1994). Swanson argues that this parenthetical limits the reach of § 6531(6) to violations that include "intimidation of officers and employees of the United States." The Government counters that the parenthetical is descriptive and explains what § 7212(a) is, but does not mean that only "intimidation" prosecutions under § 7212(a) enjoy the six-year limitation period. We agree with the Government. As the Ninth Circuit recently concluded after examining the structure of

4

§ 6531, "the parenthetical language in§ 6531(6) is descriptive, not limiting." United States v. Workinger, 90 F.3d 1409, 1414 (9th Cir. 1996); see also United States v. Brennick, 908 F. Supp. 1004, 1017-18 (D. Mass. 1995).

Alternatively, Swanson argues that, even if the limitations period is six years, his indictment and the evidence at his trial rested on acts that occurred more than six years prior to his October 11, 1995 indictment, i.e., prior to October 11, 1989. The indictment includes the following facts that occurred before October 11, 1989: (1) Swanson changed the name of his business in July 1984 and December 1986 to get new employer identification numbers to avoid paying back taxes; (2) on or about April 13, 1988, Swanson lied to the IRS about whether the Swanson Group had employees and whether it had been sold; (3) on or about July 26, 1989, Swanson prepared false income tax returns for the years 1987 and 1988 for the Swanson Group; (4) on or about August 21, 1989, Swanson prepared false Employer's Quarterly Federal Tax Returns for 1987; and (5) sometime after June 28, 1989, Swanson prepared the false 1988 returns.

However, the indictment also alleges one crucial fact that did occur during the limitation period: On or about November 29, 1990, Swanson filed the false 1988 returns. Additionally, the indictment notes that at some time prior to March 2, 1994, Swanson falsely stated that he had mailed and filed some of the 1987 and 1988 tax returns; he also created and submitted falsified documents purporting to be copies of those returns. The indictment further states that between 1987 and the filing date of the indictment (October, 1995) Swanson had destroyed the payroll records for 1987 and 1988. This conduct could have occurred either before or after limitations ran or during both periods.

"[T]he purpose of the criminal statute of limitations is to protect individuals from having to defend conduct of the`far-distant past.'" United States v. Blizzard, 27 F.3d 100, 102 (4th Cir. 1994) (quoting Toussie v. United States, 397 U.S. 112, 115 (1970)). For this reason, "`criminal limitations statutes are to be liberally interpreted in favor of repose.'" Id. However, "[s]tatutes of limitations normally begin to run when the crime is complete." Toussie, 397 U.S. at 115 (citing Pendergast v. United States, 317 U.S. 412, 418 (1943)) (alteration in

5

original); see also Blizzard, 27 F.3d at 102 ("[A] statute of limitations normally will begin to run when the crime is complete.").

Because Swanson's offense under § 7212(a) was not completed until he filed his 1988 returns -- in November, 1990 -- well within the limitations period, we reject his claim that his prosecution was barred by the statute of limitations. See United States v. Ferris, 807 F.2d 269, 271 (1st Cir. 1986) (finding that for the similar violation of tax evasion under 26 U.S.C. § 7201, "it is the date of the latest act of evasion . . . that triggers the statute of limitations."); see also United States v. DiPetto, 936 F.2d 96, 98 (2d Cir. 1991) (concluding that "a section 7201 prosecution involving the failure to file income taxes is timely if commenced within six years of the day of the last act of evasion."); United States v. Williams, 928 F.2d 145, 149 (5th Cir. 1991) (same).

II.

Swanson next asserts that Count One was multiplicitous with Counts Two through Five. We have defined multiplicity as "the charging of a single offense in several counts.[1 Charles A. Wright, Federal Practice & Procedure § 142, at 469 (2d ed. 1982).] The signal danger in multiplicitous indictments is that the defendant may be given multiple sentences for the same offense . .. ." United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993). Absent clearly contrary legislative intent, "`where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" United States v. Allen, 13 F.3d 105, 108 (4th Cir. 1993) (citing Blockburger v. United States, 284 U.S. 299, 304 (1932)).

Under this test, Swanson's conviction under § 7212(a) was not multiplicitous with his convictions under § 7206(1). The elements of a § 7206(1) violation are: "(1) the defendant made and subscribed [which includes filing] to a tax return containing a written declaration; (2) the tax return was made under penalties of perjury; (3) the defendant did not believe the return to be true and correct as to every material matter; and (4) the defendant acted willfully." Aramony, 88 F.3d at 1382. In contrast, the elements of a § 7212(a) violation are that the

6

defendant: (1) corruptly, (2) endeavored, (3) to obstruct or impede the administration of the Internal Revenue Code. See 26 U.S.C. § 7212(a); United States v. Williams, 644 F.2d 696, 699 (8th Cir. 1981).

Obviously, each of these offenses requires proof of facts that the other does not.**2** Accordingly, the indictment is not multiplicitous and presents no possible Double Jeopardy problem.

III.

Swanson also claims that the district court improperly instructed the jury on the definition of "corruptly" under § 7212(a). Swanson did not object to the instruction at trial, and we therefore review for plain error. See Fed. R. Crim. P. 52(b). Read as a whole the court's instructions were not plainly erroneous. Indeed, the court correctly defined "corruptly." See United States v. Mitchell , 985 F.2d 1275, 1278 (4th Cir. 1993).

IV.

Finally, Swanson argues that the district court overstated the tax "loss" he caused for sentencing purposes. This is a factual finding, which we review for clear error. United States v. Williams, 977 F.2d 866, 869 (4th Cir. 1992). There was no clear error here. The district court adopted the findings in the pre-sentence report that Swanson caused a tax loss of almost $5.5 million. The calculations in the report do not appear to be faulty and the district court was entitled to rely on them. See United States v. Terry, 916 F.2d 157, 160-162 (4th Cir. 1990). Indeed, as the Government pointed out at sentencing, Swanson also evaded payment of corporate taxes and failed to pay taxes on

_____

**2** Swanson's claim that "willfully" and "corruptly" constitute the same element is meritless. "Willfulness" is a "voluntary, intentional violation of a known legal duty." Cheek v. United States, 498 U.S. 192, 201 (1991). "`Corruptly,'" by contrast, "`describes an act done with an intent to give some advantage inconsistent with the official duty and rights of others' . . . . Misrepresentation and fraud. . . are paradigm examples of activities done with an intent to gain an improper benefit or advantage." United States v. Mitchell, 985 F.2d 1275, 1278 (4th Cir. 1993) (citing United States v. Reeves, 752 F.2d 995, 998 (5th Cir. 1985)).

7

embezzled income and none of these amounts were included in the loss calculation. In view of this, the district court properly noted that the pre-sentence report's loss figure "is probably a conservative estimate." Accordingly, the district court did not err in sentencing Swanson based on a loss of almost $5.5 million.

V.

For the foregoing reasons, Swanson's convictions and sentences are hereby

AFFIRMED.

8